UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-319

| | |
|---|---|
| CHENISE WELCH, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OF DECISION** |
| ) | **AND ORDER** |
| MICHAEL ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ) | |
|     Defendant. ) | |
| ) | |

**THIS MATTER** comes before the court on the Plaintiff's Motion for Summary Judgment (Doc. 10), Defendant's Motion for Summary Judgment (Doc. 17), and the Memorandum and Recommendation of the Honorable David Keesler, U.S. Magistrate Judge (Doc. 19). The court has before it Plaintiff's Objections (Doc. 22) and the Commissioner's Response (Doc. 23). The court has considered the arguments of the parties, and the matter is now ripe for determination.

**Findings and Conclusions**

**I.    Introduction**

Plaintiff has not objected to the Procedural History as provided in the Memorandum and Recommendation. The court therefore adopts as its own such sections of the Memorandum and Recommendation. Plaintiff has objected to the following findings in the Judge Keesler's Memorandum & Recommendation:

    1.    The Administrative Law Judge (ALJ) properly found that Plaintiff's condition did not qualify for disability benefits because Plaintiff did not meet the criteria under 20 C.F.R. Part 404, Subpt P, App. 1, Listing § 12.05C, which requires that Plaintiff establish a "valid verbal, performance, or full scale IQ score of 60 to 70

and a physical or other mental impairment imposing additional and significant work-related limitation of function."

Plaintiff argues that she has mild mental retardation, not borderline intellectual functioning as found by the ALJ and Judge Keesler. A finding of "borderline intellectual function" does not meet or equal one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1 as 12.02 or 12.05 series of listed impairments. Defendant argues that even if Plaintiff established a valid IQ score to meet the first prong of the 12.05C inquiry, Plaintiff has failed to establish "significant work related limitation of function."

2. The ALJ properly adopted the opinion of the consultative examiner in making the determination of Plaintiff's impairment severity.

Plaintiff argues that pertinent records were not located in the file at the time the consultative examiner completed his report, and therefore, the consultative examiner could not provide an accurate or complete assessment of the Plaintiff. Defendant argues that the consultative examiner conducted extensive evaluation of Plaintiff, and the ALJ considered the documentation not viewed by the consultative examiner in making its determination.

3. The court does not require the ALJ to resolve the discrepancy between the Specific Vocational Preparation (SVP) levels for jobs identified by the Vocational Expert as positions for which Plaintiff would be eligible and the SVP levels for the same jobs as identified by the Dictionary of Occupational Titles (DOT). The Memorandum & Recommendation notes that any error in identifying the SVP level of a position was harmless error. In short, Plaintiff was evaluated to be eligible to work in positions with an SVP level of two (2), limiting Plaintiff's work to "simple routine work." See Memorandum and Recommendation by U.S. Magistrate Judge Keesler, p. 12. The Vocational Expert identified three jobs for which Plaintiff would be eligible to work, one of which has an SVP level three (3) according to the DOT. The other two positions are SVP level two (2) according to the DOT.

Plaintiff asserts that the ALJ was required to resolve a conflict between the testimony of the Vocational Expert and the DOT for the position for which Plaintiff was determined to be

eligible. Defendant points out that there is no discrepancy between the sources for at least two of the positions identified by the Vocational Expert.

## II.   Legal Standard

The Federal Magistrate Act provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Similarly, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the court has conducted a careful review of Judge Keesler's Memorandum & Recommendation.

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this court's review of the Commissioner's final decision to: (1) whether substantial evidence supports the decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390; see Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986). "It consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1996). The decision must be based on the record as a whole. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). The appellate court has emphasized that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456; Smith v. Schweiker, 795 F.2d at 345; Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."). If the Commissioner's decision is supported by substantial evidence under the correct legal standard, it must be affirmed even if the reviewing court would have decided differently. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

**III.    Discussion**

The court has carefully considered Judge Keesler's Memorandum and Recommendation, Plaintiff's Objections, and Defendant's Response.  Further, the court has reviewed the relevant parts of the Administrative Record, including the ALJ's determination as well as the decision of the Appeals Council.

Based on such review, the court finds that Judge Keesler correctly determined that the Commissioner's decision to deny Plaintiff's application for disability benefits was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and that the Commissioner's decision should be affirmed.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

### A. Objection as to Listing Determination

Clearly, substantial evidence supports the ALJ's determination that plaintiff does not qualify for disability benefits because plaintiff did not meet the criteria under 20 C.F.R. Part 404, Subpt P, App. 1, Listing § § 12.05C:

> the claimant has borderline intellectual functioning, rather than the "significantly subaverage" intellectual functioning contemplated by the 12.05 series of listings. The undersigned further finds that the claimant's borderline intellectual functioning does not result in more than mild limitation in activities of daily living or social interaction, and at most moderate limitation in maintaining concentration, persistence, and pace. She does not have evidence of any episodes of decompensation due o mental disorder. The claimant's borderline intellectual functioning therefore does not meet the "B" criteria for listing 12.02.
> Additionally, the claimant's borderline intellectual functioning does not meet the "C criteria" for Listing 12.02. The claimant does not have medically documented history of a chronic organic mental disorder of at least 2 years' duration with either repeated episodes of decompensation, each of extended duration; a residual disease process resulting in such marginal adjustment that even a minimal increase in the mental demands or change in the environment would be predicted to cause the individual to decompensate; or current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such arrangement.

Administrative Record ("A.R."), at 17-18. Such determination is supported by substantial evidence in the record.

### B. Objection as to Considering the Opinion of a Consultative Examiner as to RFC

Further, the ALJ properly considered the opinions of the consultative examiner, who conducted extensive evaluation of Plaintiff. In a report dated March 4, 2010, the consultative examiner, Dr. Britt, indicated among other findings that Plaintiff was currently functioning at the lower end of the borderline range of mental retardation, which seemed to be "her lifelong level of functioning and explains why she has been able to hold at least 3 jobs for a considerable

period of time." A.R., at 459. Plaintiff contends that the consultative examiner did not consider medical records that were contained in the file at the time of his exam inasmuch as she submitted pertinent records in preparation for the administrative hearing, which were not in the record at the time Dr. Britt examined Plaintiff. See Pl.'s Mem. In Support, at 17. These records are:

    (1)    three IQ tests, treatment records from the CMC Randolph Behavioral Health Center Emergency Department from September 8, 2009, A.R., at 466- 476;
    (2)    treatment records from the CMC Randolph Behavioral Health Center from November 8, 2002, A.R., at 1075-1077;
    (3)    school evaluations from March 22, 2007 to May 10, 2007, A.R., at 1082- 1087;
    (4)    treatment records from the Neurological Institute from December 20, 2007 to July 30, 2008, A.R., at 1088-1098; and
    (5)    treatment records from the First Family Community Services Center from April 10, 2007 to April 28, 2009, A.R., at 1099-1127.

While the consultative examiner can only examine the records that are in the administrative record at the time of the exam, review of the ALJ's decision reveals that the ALJ considered these additional records when he made his Residual Functional Capacity (hereinafter "RFC") determination. See A.R., at 16-17, 20. Further, the ALJ stated that he considered the entire record. A.R., at 18. The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Not only does the record evidence provide substantial support for the ALJ's RFC determination, the additional evidence submitted in advance of the administrative hearing does not indicate that Plaintiff experienced any limitations beyond those contained in the ALJ's RFC determination.

**C.     Resolution of Discrepancy with DOT as to One of Three Jobs**

Assuming that a pertinent discrepancy exists between the testimony of the Vocational Expert ("VE") and the description found in the Dictionary of Occupational Titles ("DOT") as to job of "Food Assembler", plaintiff can point to no discrepancy between the testimony of the VE and the information contained in the DOT as to the position of "food service worker" and "housekeeper" as identified by the Vocational Expert and cited by the ALJ in his determination.[1] Based on VE testimony, the ALJ found that Plaintiff could perform the jobs of a housekeeper, DOT § 323.687-014, a food assembler, DOT § 319.484-010, and a food service worker, DOT § 319.677-014.  See , A.R., at 22.  It is undisputed that the jobs of food service worker and housekeeper have SVP levels of 2, which is fully consistent with the ALJ's RFC determination See SSR 00-4p, 2000 WL 1898704, at *3.[2]

Plaintiff is correct, however, that S.S.R. 00-4p requires the ALJ to ask the VE whether his or her testimony is consistent with the DOT:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative* responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> > Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> > If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

---

[1]     Plaintiff initially argued that the position of "food service worker" had an SVP of 3, when the DOT in fact lists an SVP of 2 for that position.  See DOT § 319.677-014.

[2]     Using the skill level definitions in 20 C.F.R.§§ 404.1568, 416.968, unskilled work corresponds to an SVP of 1 to 2, semi-skilled work corresponds to an SVP of 3 to 4; and skilled work corresponds to an SVP of 5 to 9.

S.S.R. 00-4p, at *4 (emphasis added). There is a split among the circuits and district courts as to whether this failure to ask requires remand. See Lancaster v. Comm'r of Soc. Sec., 228 Fed.Appx. 563 (6th Cir. 2007)(discussing the split and collecting cases); Wix v. Astrue, 2010 WL 520565, n.4 (M.D. Tenn. Feb.9, 2010)(same). [3] While the Court of Appeals for the Fourth Circuit has not issued a published decision on such issue, the court believes that the Fourth Circuit would determine that an ALJ's failure to inquire about consistency with the DOT is not reversible error unless a potential conflict actually exists. See Justin v. Massanari, 20 Fed.Appx. 158, 160 (4th Cir.2001) (unpublished case, finding that an ALJ is only required "to address evident discrepancies between a vocational expert's testimony and the [DOT]"). Here, two of the three jobs cited were wholly consistent with the DOT and the ALJ's RFC determination. The court finds that where, as here, the ALJ technically erred in failing to inquire about conflicts under S.S.R. 00-4p, but where there are no discrepancies between a VE's testimony and the DOT as to other jobs cited by the VE and on which the ALJ relied, such an oversight does not amount to reversible error. Id.

## IV.  Conclusion

Having carefully considered each objection, the court overrules plaintiff's objections and adopts the Memorandum and Recommendation as the decision of this court.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1)     Plaintiff's Objections (#22) are **OVERRULED**;

---

[3] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

(2) The Commissioner's Motion for Summary Judgment (#17) is **GRANTED**;

(2) Plaintiff's Motion for Summary Judgment (#10) is **DENIED**;

(3) The Commissioner's decision is **AFFIRMED**; and

(4) Plaintiff's claim is hereby **DISMISSED**.

A judgment consistent with this Memorandum of Decision and Order shall be entered simultaneously herewith by the Clerk of Court.

Signed: July 6, 2012

Max O. Cogburn Jr.
United States District Judge